1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10  STEVEN R. RODRIGUEZ,

11          Petitioner,              No. CIV S-04-0725 LKK DAD P

12      vs.

13  A. K. SCRIBNER, et al.,

14          Respondents.             FINDINGS & RECOMMENDATIONS

15  _____/

16          Petitioner is a state prisoner proceeding pro se with an application for a writ of

17  habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner challenges a judgment of conviction

18  entered against him on June 13, 2002 in the San Joaquin County Superior Court on charges of

19  driving a vehicle without permission and receiving stolen property.  He seeks relief on the

20  grounds that: (1) the prosecutor committed misconduct by withholding evidence and presenting

21  knowingly false testimony at his trial; (2) he received ineffective assistance of trial and appellate

22  counsel; (3) his rights to due process and to self-representation were violated by the state trial

23  court's failure to continue the trial after granting petitioner's motion to represent himself; (4) his

24  waiver of the right to counsel was not knowing, intelligent and unequivocal; and (5) his right to

25  due process was violated by the trial court's denial of his motions for new trial and to suppress

26  statements he made to the police.  Upon careful consideration of the record and the applicable

1

law, the undersigned will recommend that petitioner's application for habeas corpus relief be granted on his claim that his waiver of the right to counsel was involuntary and denied in all other respects.

## PROCEDURAL AND FACTUAL BACKGROUND[1]

Defendant Steven Refugio Rodriguez, Jr., was found guilty by a jury of driving a vehicle without permission (Veh. Code, § 10851, subd. (a)) and receiving a stolen vehicle (Pen. Code, § 496d).[2]  In a bifurcated proceeding, the same jury found defendant had one prior serious felony conviction for robbery with firearm use, one prior vehicle theft conviction, and two prior prison terms.  (Pen. Code, §§ 666.5, 667, subd. (d), 1170.12, subd. (b), 667.5, subd. (b).)  The trial court stayed the sentence on the receiving conviction under Penal Code section 654 and sentenced defendant to eight years in prison.

* * *

On or about December 8, 2001, Iosef Pesin's home in Stockton was burglarized.  Someone took the keys Pesin left in his bathroom and stole his 2001 Honda Civic from the carport.  Pesin recovered his car on December 20, 2001, with an additional 600 miles on the odometer.

Defendant and his fiancee, Deborah Rubalcaba, stayed at a Stockton motel from December 10 to 12, 2001.  On December 11, defendant had the keys to Pesin's Honda, which was parked in the motel parking lot.  Defendant was under surveillance by the Federal Bureau of Investigation violent crimes task force.  On December 12, 2001, the task force arrested defendant as he opened the door of the Honda with Pesin's keys.  Although Rubalcaba denied it later, a police officer testified that she told him defendant had been driving the car on December 11.

Defendant told the police he obtained the Honda from two people he knew who had burglarized Pesin's house.  Initially, he told the police he did not know the car was stolen, but later he said his acquaintances had taken it in the burglary.

/////

---

[1]  The following summary is drawn from the August 18, 2003 opinion by the California Court of Appeal for the Third Appellate District (hereinafter Opinion), at pgs. 1-3, filed in this court on August 19, 2004, as Exhibit C to respondents' answer.

[2]  All further statutory references are to the Penal Code unless otherwise indicated.

ANALYSIS

I.  <u>Standards of Review Applicable to Habeas Corpus Claims</u>

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  <u>See</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1993); <u>Middleton v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146, 1149 (9th Cir. 2000); <u>Middleton</u>, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues <u>de novo</u>.  <u>Milton v. Wainwright</u>, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997); <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th Cir. 2003).  Section 2254(d) sets forth the following standards for granting habeas corpus relief:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  <u>See also</u> <u>Penry v. Johnson</u>, 532 U.S. 782, 792-93 (2001); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Lockhart v. Terhune</u>, 250 F.3d 1223, 1229 (9th Cir. 2001).

The court looks to the last reasoned state court decision as the basis for the state court judgment.  <u>Robinson v. Ignacio</u>, 360 F.3d 1044, 1055 (9th Cir. 2004).  Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a

1   federal habeas court independently reviews the record to determine whether habeas corpus relief

2   is available under section 2254(d).  Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003);

3   Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir. 2000).  When it is clear that a state court has not

4   reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the

5   AEDPA's deferential standard does not apply and a federal habeas court must review the claim

6   de novo.  Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160,

7   1167 (9th Cir. 2002).

8   II.  Petitioner's Claims

9           A.  Prosecutorial Misconduct

10          Petitioner claims that the prosecutor committed misconduct by failing to disclose

11  exculpatory evidence to the defense and by knowingly presenting false testimony at trial.

12  Petitioner raised these claims for the first time in a petition for writ of habeas corpus filed in the

13  San Joaquin Superior Court.  (Answer, Ex. D.)  Citing In re Swain, 34 Cal.2d 300, 304 (1949),

14  the Superior Court rejected petitioner's claims of prosecutorial misconduct on the grounds that

15  they had not been alleged with sufficient particularity.  (Answer, Ex. E at 2.)  Respondents point

16  out that in Kim v. Villalobos, 799 F.2d 1317, 1319 (9th Cir. 1986), the Ninth Circuit explained

17  that the denial of a habeas petition by California courts with a citation to In re Swain is deemed a

18  denial on procedural grounds, leaving state remedies unexhausted.  Respondents argue that

19  petitioner's claims of prosecutorial misconduct remain unexhausted because petitioner did not

20  cure the deficiencies of his original allegations in a renewed petition in state court.  (Answer at

21  7.)  Respondents also urge this court to deny petitioner's claims of prosecutorial misconduct on

22  the merits pursuant to 28 U.S.C. § 2254.  (Id.)

23          An application for a writ of habeas corpus may be denied on the merits,

24  notwithstanding the failure of the applicant to exhaust available state remedies.  28 U.S.C. §

25  2254(b)(2).  A federal court considering a habeas petition may deny an unexhausted claim on the

26  merits when it is perfectly clear that the claim is not "colorable."  Cassett v. Stewart, 406 F.3d

4

614, 624 (9th Cir. 2005).  Notwithstanding petitioner's alleged failure to exhaust his claims of

prosecutorial misconduct in state court, this court will recommend that habeas relief be denied on

the merits of those claims because they are not "colorable."[3]

1.  Legal Standards

A defendant's due process rights are violated when a prosecutor's misconduct

renders a trial fundamentally unfair.  Darden v. Wainwright, 477 U.S. 168, 181 (1986).

However, such misconduct does not, per se, violate a petitioner's constitutional rights.  Jeffries v.

Blodgett, 5 F.3d 1180, 1191 (9th Cir. 1993) (citing Darden, 477 U.S. at 181 and Campbell v.

Kincheloe, 829 F.2d 1453, 1457 (9th Cir. 1987)).  Rather, claims of prosecutorial misconduct are

reviewed "'on the merits, examining the entire proceedings to determine whether the prosecutor's

[actions] so infected the trial with unfairness as to make the resulting conviction a denial of due

process.'"  Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995).  See also Greer v. Miller, 483

U.S. 756, 765 (1987); Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974); Turner v Calderon,

281 F.3d 851, 868 (9th Cir. 2002).  Relief is limited to cases in which the petitioner can establish

that prosecutorial misconduct resulted in actual prejudice.  Johnson, 63 F.3d at 930 (citing Brecht

v. Abrahamson, 507 U.S. 619, 637-38 (1993)); see also Darden, 477 U.S. at 181-83; Turner, 281

F.3d at 868.  Put another way, prosecutorial misconduct violates due process when it has a

substantial and injurious effect or influence in determining the jury's verdict.  See Ortiz-

Sandoval v. Gomez, 81 F.3d 891, 899 (9th Cir. 1996).

The United States Supreme Court has held "that the suppression by the

prosecution of evidence favorable to an accused upon request violates due process where the

evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of

the prosecution."  Brady v. Maryland, 373 U.S. 83, 87 (1963).  See also Bailey v. Rae, 339 F.3d

---

[3]  Because the California Superior Court denied petitioner's claims of prosecutorial misconduct on procedural grounds, the AEDPA's deferential standard does not apply and this court must review those claims de novo.  Nulph, 333 F.3d at 1056; Pirtle, 313 F.3d at 1167.

1107, 1113 (9th Cir. 2003).  The duty to disclose such evidence is applicable even though there

has been no request by the accused, United States v. Agurs, 427 U.S. 97, 107 (1976), and

encompasses impeachment evidence as well as exculpatory evidence.  United States v. Bagley,

473 U.S. 667, 676 (1985).  A Brady violation may also occur when the government fails to turn

over evidence that is "known only to police investigators and not to the prosecutor."

Youngblood v. West Virginia, 547 U.S. 867, 870 (2006) (quoting Kyles v. Whitley, 514 U.S.

419, 438 (1995)).[4]  There are three components of a Brady violation:  "[t]he evidence at issue

must be favorable to the accused, either because it is exculpatory, or because it is impeaching; the

evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice

must have ensued."  Strickler v. Greene, 527 U.S. 263, 281-82 (1999).  See also Banks v. Dretke,

540 U.S. 668, 691 (2004); Silva v. Brown, 416 F.3d 980, 985 (9th Cir. 2005).

        In order to establish prejudice, a petitioner must demonstrate that "'there is a

reasonable probability' that the result of the trial would have been different if the suppressed

documents had been disclosed to the defense."  Strickler, 527 U.S. at 289.  "The question is not

whether petitioner would more likely than not have received a different verdict with the

evidence, but whether "in its absence he received a fair trial, understood as a trial resulting in a

verdict worthy of confidence."  (Id.) (quoting Kyles, 514 U.S. at 434).  See also Silva, 416 F.3d

at 986 ("a Brady violation is established where there 'the favorable evidence could reasonably be

taken to put the whole case in such a different light as to undermine confidence in the verdict.'")

Once the materiality of the suppressed evidence is established, no further harmless error analysis

is required.  Kyles, 514 U.S. at 435-36; Silva, 416 F.3d at 986.  "When the government has

suppressed material evidence favorable to the defendant, the conviction must be set aside."

Silva, 416 F.3d at 986.

---

[4] "[T]he individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." Kyles, 514 U.S. at 437.

1     It is also clearly established that "a conviction obtained by the knowing use of

2   perjured testimony must be set aside if there is any reasonable likelihood that the false testimony

3   could have affected the jury's verdict." Bagley, 473 U.S. at 680 n.9. See also Morales v.

4   Woodford, 388 F.3d 1159, 1179 (9th Cir. 2004) ("The due process requirement voids a

5   conviction where the false evidence is 'known to be such by representatives of the State.'")

6   (quoting Napue v. Illinois, 360 U.S. 264, 269 (1959)).  This rule applies even where the false

7   testimony goes only to the credibility of the witness.  Napue, 360 U.S. at 269; Mancuso v

8   Olivarez, 292 F. 3d 939, 957 (9th Cir. 2002).  There are two components to establishing a claim

9   for relief based on the prosecutor's introduction of perjured testimony at trial.  First, the

10   petitioner must establish that the testimony was false.  United States v. Polizzi, 801 F.2d 1543,

11   1549-50 (9th Cir. 1986).  Second, the petitioner must demonstrate that the prosecution knowingly

12   used the perjured testimony.  Id.  Mere speculation regarding these factors is insufficient to meet

13   petitioner's burden.  United States v. Aichele, 941 F.2d 761, 766 (9th Cir. 1991).

14          2. Withholding Exculpatory Evidence

15          Here, petitioner claims that the prosecutor committed misconduct by failing to

16   timely provide police reports and a plea agreement regarding a person named Jeremy Foster, who

17   was originally charged with stealing the Honda but apparently later entered into a plea agreement

18   pursuant to which the charge against him was dismissed.  (Pet., handwritten attachment (Pet.), at

19   8-10.)  Petitioner also describes other material allegedly withheld by the prosecution, as follows:

20   "police reports, fingerprint analysis, possible co-defendant" and "police reports of all officers on

21   12-12-01, fingerprint analysis/witnesses and impeachable material of prosecution witnesses."

22   (Id. at 10; traverse at 11.)  Petitioner argues that the prosecutor's failure to produce this evidence

23   violated his right to present a defense and to obtain witnesses on his behalf.  (Pet. at 9.)

24   Petitioner also alleges that the prosecution destroyed a "finger print analysis" and failed to turn

25   over materials requested during discovery in an attempt to "delay disclosure of evidence causing

26   prejudice."  (Id. at 11.)  Finally, petitioner faults the prosecution for failing to turn over "police

7

1   reports of misconduct by prosecutions witness before preliminary hearing." (Id. at 13.)  It

2   appears from the record that the prosecutor provided some information about Mr. Foster to the

3   defense approximately two weeks before trial.  However, petitioner argues he could not obtain

4   Foster as a witness because Foster was incarcerated in state prison.  (Id. at 9.)

5           Petitioner's vague description of the materials he alleges should have been

6   produced to him in pretrial discovery is insufficient to establish that the prosecutor withheld

7   exculpatory evidence or that petitioner suffered prejudice as a result.  Petitioner does not describe

8   with any particularity how any of the above-described materials or testimony would have been

9   helpful to his defense.  He also fails to provide any explanation of why he could not have made

10  use of the materials that were provided to him two weeks before his trial commenced.

11          To the extent petitioner is claiming the prosecutor committed misconduct by

12  failing to disclose evidence indicating that Jeremy Foster may have stolen the Honda, his claim

13  lacks merit.  California Vehicle Code § 10851(a) provides:

14              (a) Any person who drives or takes a vehicle not his or her own,
                without the consent of the owner thereof, and with intent either to
15              permanently or temporarily deprive the owner thereof of his or her
                title to or possession of the vehicle, whether with or without intent
16              to steal the vehicle, or any person who is a party or an accessory to
                or an accomplice in the driving or unauthorized taking or stealing,
17              is guilty of a public offense and, upon conviction thereof, shall be
                punished by imprisonment in a county jail for not more than one
18              year or in the state prison or by a fine of not more than five
                thousand dollars ($5,000), or by both the fine and imprisonment.
19

20  Petitioner was charged with violating this statute on the theory that he drove the Honda, knowing

21  that it had been stolen.  (Reporter's Transcript on Appeal (RT) at 258.)  Petitioner was not

22  charged with the actual vehicle theft.  (Id.)  Under these circumstances, evidence that Jeremy

23  Foster stole the vehicle would appear to be irrelevant to the crime of which petitioner was

24  convicted.  Petitioner has not offered any argument sufficient to convince this court that the

25  /////

26  /////

1   police reports and the plea agreement entered into by Mr. Foster would have been favorable to

2   his defense.[5]

3              To the extent petitioner is suggesting Jeremy Foster might have been a favorable

4   defense witness because he could have testified that petitioner did not know the car was stolen,

5   he has failed to substantiate such a claim.  Petitioner does not explain the nature of the testimony

6   Mr. Foster would have given had he been called as a witness.  As petitioner said to the trial judge

7   at the hearing on his motion for a new trial, "who knows what he would have said on the stand."

8   (Id. at 409.)  Such speculation is insufficient to establish either materiality or prejudice.  See

9   Jones v. Gomez, 66 F.3d 199, 204 (9th Cir. 1995) ("'[c]onclusory allegations which are not

10  supported by a statement of specific facts do not warrant habeas relief'") (quoting James v. Borg,

11  24 F.3d 20, 26 (9th Cir. 1994)).  In light of the fact that petitioner has not demonstrated Jeremy

12  Foster would have testified in his favor, petitioner has failed to demonstrate prejudice resulting

13  from the prosecutor's delay, if any, in providing the defense information regarding Foster.

14             The court acknowledges that petitioner has made several requests in this case for

15  discovery and to expand the record.  All such requests were denied by the undersigned on the

16  grounds that petitioner had failed to demonstrate how the requested documents related to the

17  instant habeas petition or why the granting of the requests was necessary to the full development

18  of his claims of prosecutorial misconduct.  Specifically, the court found that the discovery

19  requests were based on pure speculation and petitioner's misreading of trial testimony and

20  misinterpretation of statements made by the trial judge.  (See Order filed September 21, 2006.)

21  Throughout these proceedings, petitioner has failed to substantiate his broad claims with any

22  /////

23  _____

24       [5]  In the traverse, petitioner denies that he "gave any officer any data about a stolen
    vehicle" and states that "no-one ever witnessed petitioner driving said vehicle."  (Traverse at 13.)
25  By virtue of these allegations petitioner may be attempting to challenge the sufficiency of the
    evidence introduced at his trial in support of his conviction.  Any claim of insufficient evidence
26  has not been exhausted by petitioner in state court and, in any event, is not supported by the
    record.  Accordingly, any such claim should be rejected.

1  showing that his constitutional rights were violated at his trial by the prosecutor.  As discussed

2  above, vague and conclusory allegations are insufficient to establish federal constitutional error.

3       For all of these reasons, petitioner is not entitled to relief on his claim that the

4  prosecutor committed misconduct by failing to produce exculpatory evidence to the defense in a

5  timely manner.

6            3.  Presenting Knowingly False Testimony

7       Petitioner's next claim is that the prosecutor at his trial committed misconduct by

8  failing to impeach the false trial testimony of prosecution witness Officer Ridenour.  (Pet. at 10,

9  12.)  Petitioner does not describe in the body of his habeas petition the nature of any allegedly

10  false trial testimony by Officer Ridenour.  Petitioner did include as an exhibit to his petition the

11  police report of his arrest, in which Officer Ridenour stated that petitioner was advised of his

12  constitutional rights pursuant to Miranda and agreed to discuss the Honda with the arresting

13  officers.[6]  (Pet., Ex. 1.)  According to that police report, petitioner stated that his friends Jeremy

14  and Nicole stole the car and then gave it to him to drive for a couple of days.  (Id.)  Ridenour

15  reported that petitioner admitted he knew when he got the car that it was stolen.  (Id.)

16       Petitioner also includes as an exhibit to his petition a transcript of a pretrial

17  hearing held in the state court with respect to the admissibility of petitioner's statements to

18  Officer Ridenour.  (Pet., Ex. 4.)  The transcript reflects that Officer Ridenour testified that

19  petitioner:

20  /////

21  _____

22       [6]  In Miranda v. Arizona, the Supreme Court established the rule that during a custodial
    interrogation an accused:

23
            ... must be warned prior to any questioning that he has the right to
24          remain silent, that anything he says can be used against him in a
            court of law, that he has the right to the presence of an attorney,
25          and that if he cannot afford an attorney one will be appointed for
            him prior to any questioning if he so desires.
26  384 U.S. 436, 478-79 (1966).

1

2

3

4

> gave me information in our first conversation, prior to Miranda, that Nicole and Jeremy printed up stolen checks and were involved in credit card and check fraud.  He didn't know Jeremy and Nicole's last name, but he said he knew where they lived.  So I asked him if we drove by, could he point out the house.  So, on the way to jail, we drive by and he pointed out a house that he said Nicole and Jeremy lived at.

5  (Id.)  Later in that same hearing, Officer Ridenour testified that, prior to being given his Miranda

6  warnings, petitioner discussed "the issue as to them doing check frauds and forgeries and stuff."

7  (Pet., Ex. 6.)  Ridenour further testified that after he gave petitioner his Miranda warnings, he

8  asked petitioner whether he wanted to talk about how he got the car.  (RT at 49.)  According to

9  Ridenour, petitioner originally claimed the Honda had been purchased by his friends but later

10  admitted that it had been stolen.  (Id. at 47.)[7]

11          At petitioner's trial, Officer Ridenour testified that he "spoke shortly" with

12  petitioner before advising him of his Miranda rights.  (Id. at 164.)  Ridenour did not specify what

13  was discussed during that "short" conversation.  (Id.)  Ridenour further testified that after he gave

14  petitioner his Miranda warnings, petitioner first stated that he didn't know the Honda was stolen

15  but then admitted that he was aware the car was stolen when his friends offered to let him drive

16  it.  (Id. at 166-67.)  Upon questioning by the court and by petitioner himself, Officer Ridenour

17  testified that he and petitioner did not discuss the Honda prior to petitioner receiving his Miranda

18  warnings, but did so only thereafter.  (Id. at 186-89.)

19          Petitioner is apparently claiming that the prosecutor knowingly presented false

20  testimony when Officer Ridenour testified at trial that petitioner discussed the theft of the Honda

21  after receiving his Miranda warnings when, according to petitioner, that discussion took place

22  prior to the warning being administered.  (Traverse at 13.)  Petitioner also appears to be claiming

23  /////

24

25          [7]  Petitioner's motion to suppress his pre-trial statements to Officer Ridenour was denied

26  by the trial court on the grounds that petitioner waived his right to remain silent and voluntarily agreed to talk about the Honda.  (RT at 57.)

1   that he was prevented from exposing Ridenour's false statements because the prosecutor refused

2   to turn over "all police reports." (Id.)  These claims lack merit and should be rejected.

3            Petitioner may also be arguing that Officer Ridenour's testimony at trial was

4   inconsistent on this point with his testimony at the pretrial suppression hearing, thus establishing

5   that his trial testimony was perjured and the prosecutor knew it.  In any event, petitioner's

6   arguments in this regard are misplaced.  A review of the record reflects that Officer Ridenour

7   testified at the pretrial suppression hearing that petitioner told him, prior to the <u>Miranda</u> warnings

8   being read, only that "Nicole and Jeremy printed up stolen checks and were involved in credit

9   card and check fraud" and that he knew where Nicole and Jeremy lived.  (Pet., Ex. 4.)[8]  Ridenour

10  did not testify at that pretrial hearing that petitioner discussed the theft of the Honda prior to

11  receiving his <u>Miranda</u> warnings.  Any argument by petitioner to the contrary is unsupported by

12  the record.  At trial, Ridenour consistently testified that petitioner discussed the theft of the

13  Honda only after he received his <u>Miranda</u> warnings.  In short, Ridenour's testimony at trial was

14  not inconsistent with his testimony at the pretrial suppression hearing or with the police report

15  describing petitioner's arrest.  (<u>See</u> Pet., Ex. 1.)  There is simply no indication in the record

16  before this court that Ridenour testified falsely at trial or that the prosecutor had reason to believe

17  that his trial testimony was false in any way.  Petitioner's claim lacks a factual basis and should

18  therefore be rejected.

19            Petitioner also appears to be claiming that the prosecutor committed misconduct

20  in his opening statement when he told the jury that the evidence would show that two of

21  petitioner's friends approached him, told him they had stolen a vehicle and asked petitioner if he

22

23          [8]  The single page of the police report submitted by petitioner with his federal petition is
24  not clearly inconsistent with this version of events.  Therein, Officer Ridenour reports that while
    state parole agents were searching the Honda he spoke to petitioner but does not identify the
25  topics that were discussed at that time.  (Pet., Ex. 1.)  Ridenour also reported that after he read
    petitioner his <u>Miranda</u> rights, petitioner acknowledged his rights and first stated that he did not
26  know the car was stolen.  (<u>Id.</u>)  Thereafter, petitioner admitted that he knew when he got the car
    from his friends Nicole and Jeremy that it was not legally theirs to give him.  (<u>Id.</u>)

1    wanted to drive it.  (Pet. at 12; see also RT at 105-06.)  After a review of the record, this court

2    concludes the prosecutor's statement was consistent with the testimony that was elicited at

3    petitioner's trial.  Accordingly, any claim of prosecutorial misconduct in this regard should also

4    be rejected.

5                For the foregoing reasons, petitioner is not entitled to relief on his claim that the

6    prosecutor committed misconduct.

7                        B.  Ineffective Assistance of Counsel

8                              1.  Trial Counsel

9                Petitioner next claims that his trial court counsel, who was relieved prior to the

10   commencement of trial, rendered ineffective assistance when he failed to: (1) file a petition for

11   writ of habeas corpus challenging the trial court's denial of his motion to dismiss the

12   information; (2) file a motion challenging the destruction of evidence by the police; (3) request

13   appropriate discovery materials (including personnel records of Officer Ridenour through a so-

14   called Pitchess motion, records demonstrating police misconduct in the Stockton police

15   department, notes of conversations between petitioner and Officer Ridenour and fingerprint

16   analyses); (4) conduct sufficient investigation and/or confer with petitioner; (5) challenge the

17   testimony of Officer Ridenour at the pretrial hearing as inconsistent with the police report of

18   petitioner's arrest; (6) object at the preliminary hearing to hearsay evidence and to the

19   prosecutor's failure to establish the "corpus delecti" of the crime; (7) investigate potential

20   defense witnesses and call as witnesses Jeremy Foster, Mike Underdahl, Monica Reyes, Norma

21   Reyes and Darlene Osejo; (8) ascertain through discovery that petitioner was "never Mirandized"

22   and seek discovery to determine whether Officer Ridenour had committed  prior acts of

23   misconduct; and (9) interview Mr. Foster, who allegedly confessed to the crime with which

24   petitioner was charged.  (Pet. at 13-22; Traverse at 14-16.)  These claims were rejected on the

25   merits in the California courts.  (Answer, Exs. E, G, H.)  After setting forth the applicable legal

26   standards, the court will analyze each of them below.

1       The Sixth Amendment guarantees a criminal defendant the effective assistance of

2  counsel.  The United States Supreme Court set forth the test for demonstrating ineffective

3  assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984).  To support an

4  ineffective assistance of counsel claim, a petitioner must first show that, considering all the

5  circumstances, counsel's performance fell below an objective standard of reasonableness.  Id. at

6  687-88.  After a petitioner identifies the acts or omissions that are alleged not to have been the

7  result of reasonable professional judgment, the court must determine whether, in light of all the

8  circumstances, the identified acts or omissions were outside the wide range of professionally

9  competent assistance.  Id. at 690; Wiggins v. Smith, 539 U.S. 510, 521 (2003).  Second, a

10  petitioner must establish that he was prejudiced by counsel's deficient performance.  Strickland,

11  466 U.S. at 693-94.  Prejudice is found where "there is a reasonable probability that, but for

12  counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at

13  694.  A reasonable probability is "a probability sufficient to undermine confidence in the

14  outcome."  Id.  See also Williams, 529 U.S. at 391-92; Laboa v. Calderon, 224 F.3d 972, 981

15  (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was

16  deficient before examining the prejudice suffered by the defendant as a result of the alleged

17  deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

18  sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955

19  (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

20       In assessing an ineffective assistance of counsel claim "[t]here is a strong

21  presumption that counsel's performance falls within the 'wide range of professional assistance.'"

22  Kimmelman v. Morrison, 477 U.S. 365, 381 (1986) (quoting Strickland, 466 U.S. at 689).  There

23  is in addition a strong presumption that counsel "exercised acceptable professional judgment in

24  all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

25  Strickland, 466 U.S. at 689).

26  /////

1          Petitioner has failed to demonstrate prejudice with respect to his claims of

2    ineffective assistance of counsel.  Although he faults his trial counsel for failing to call witnesses,

3    petitioner does not describe how those witnesses would have testified.  At most, petitioner

4    appears to be arguing that if counsel had interviewed certain persons, he may possibly have

5    turned up helpful evidence.  Any such contention is insufficient to establish prejudice.  See Dows

6    v. Wood, 211 F.3d 480, 486 (9th Cir. 2000) (to establish that counsel was ineffective for failing

7    to produce a witness at trial, a habeas petitioner must provide "evidence that this witness would

8    have provided helpful testimony for the defense," such as an affidavit from the alleged witness);

9    Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997) (petitioner's ineffective assistance claim

10   denied where he presented no evidence concerning what counsel would have found had he

11   investigated further, or what lengthier preparation would have accomplished); United States v.

12   Berry, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to meet prejudice prong of

13   ineffectiveness claim because he offered no indication of what potential witnesses would have

14   testified to or how their testimony might have changed the outcome of the hearing).

15          Petitioner also faults his counsel for failing to file numerous pretrial motions.

16   Assuming arguendo that counsel would have been permitted under California law to file the

17   motions now suggested,  petitioner has failed to demonstrate that any of these motions would

18   have had merit.  Put another way, petitioner has failed to demonstrate prejudice, or that the result

19   of the proceedings would have been different absent counsel's allegedly deficient performance.

20   Of course, an attorney's failure to make a meritless objection or motion does not constitute

21   ineffective assistance of counsel.  Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000) (citing

22   Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985)); see also Rupe v. Wood, 93 F.3d 1434,

23   1445 (9th Cir. 1996) ("the failure to take a futile action can never be deficient performance").

24          Petitioner has also failed to show that additional discovery would have revealed

25   misconduct by Officer Ridenour or anyone else in the Stockton Police Department, or would

26   have demonstrated that petitioner was innocent of the crimes with which he was charged.  The

court notes, in this regard, that petitioner's trial court counsel testified at the hearing on

petitioner's motion for new trial that he did not file a formal discovery motion because he

believed the prosecutor had provided the appropriate discovery materials pursuant to his informal

discovery request filed at the time of petitioner's arraignment.  (RT at 434-35.)  Trial counsel

also stated that he did not file a "Pitchess" motion seeking police personnel records because he

did not believe it was warranted.  (Id. at 436.)  In the absence of specific information to the

contrary, this court must assume that counsel's decision not to seek additional discovery by way

of motion was within the wide range of professional assistance.

Petitioner has also failed to demonstrate that his counsel would have prevailed on

any challenge to Officer Ridenour's testimony at the suppression hearing on the grounds that it

was inconsistent with police reports written at the time of petitioner's arrest.  As discussed

above, petitioner has not shown that Ridenour's testimony was false in any respect and has

certainly failed to raise a serious reason to suspect that any police reports or other official

documents had been fabricated.

Petitioner's conclusory allegations that his counsel rendered ineffective assistance

because of his failure to confer with petitioner, to object to hearsay and to the prosecutor's failure

to establish the corpus delicti of the crime at the pretrial hearing, to investigate potential defense

witnesses, and to ascertain that petitioner was "never Mirandized" are insufficient to establish

prejudice.  See Blackledge v. Allison, 431 U.S. 63, 74 (1977) ("presentation of conclusory

allegations unsupported by specifics is subject to summary dismissal"); Jones, 66 F.3d at 204;

James, 24 F.3d at 26.  In any event, "brevity of consultation time between a defendant and his

counsel alone cannot support a claim of ineffective assistance of counsel. "  Chavez v. Pulley,

623 F. Supp. 672, 685 (E.D. Cal. 1985).  This is especially true where the petitioner fails to

allege what purpose further consultation would have served and fails to demonstrate how further

consultation with his attorney would have produced a different result.  Strickland, 466 U.S. at

695; Chavez, 623 F. Supp. at 685.  Moreover, petitioner's counsel testified at the hearing on

1  petitioner's motion for new trial that he discussed petitioner's case with him, including the

2  evidence and possible defenses, "several times."  (RT at 440.)

3          This court also rejects petitioner's argument that his counsel rendered ineffective

4  assistance because of his defective performance at the suppression hearing.  A review of the

5  record reflects that defense counsel conducted a thorough examination of Officer Ridenour,

6  highlighting the fact that petitioner made several statements prior to being advised of his

7  constitutional rights.  (See id. at 45-57.)  Petitioner has failed to demonstrate that his counsel's

8  performance at the hearing was outside the wide range of reasonable professional assistance.

9          The San Joaquin County Superior Court rejected petitioner's claims of ineffective

10  assistance of counsel, reasoning as follows:

11          Petitioner recognizes the required elements in order to establish a
            prima facie case for a claim of ineffectiveness of counsel – both a
12          showing of performance below the standard and prejudice to the
            outcome.  However, his claims of inadequate performance by
13          appointed counsel are not supported by the record.  To the
            contrary, the court file reflects counsel moved to dismiss the
14          vehicle theft charge under PC 995; attempted contact with a
            proposed witness (who was not located); and was prepared for trial
15          up until the time Petitioner sought to represent himself.  In
            addition, Petitioner has failed to set forth any specific facts, rather
16          than conclusions to support his contentions or demonstrate
            prejudice as a result of counsel's actions.

17
            Petitioner has failed to set forth a prima facie case of
18          ineffectiveness of counsel (People v. Weaver (2001) 26 C4th 876;
            In Re Strickland (1984) 466 U.S. 668) and summary denial as top
19          (sic) this issue is appropriate (In Re Bower (1985) 38 C3d 865,
            872; People v. Jackson (1980) 28 C3d 264).

20

21  (Answer, Ex. E at 2.)  The state court opinion in this regard is not an unreasonable application of

22  Strickland and should not be set aside.  Accordingly, petitioner is not entitled to relief on his

23  claims of ineffective assistance of trial court counsel.

24  /////

25  /////

26  /////

17

2.  Appellate Counsel

Petitioner also claims that his appellate counsel rendered ineffective assistance by failing to raise on appeal the above-described issues regarding the performance of petitioner's trial court counsel.

The Strickland standards apply to appellate counsel as well as trial counsel.  Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989). However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined."  Id.  See also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.")  There is, of course, no obligation to raise meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88 (requiring a showing of deficient performance as well as prejudice).  Thus, counsel is not deficient for failing to raise a weak issue.  See Miller, 882 F.2d at 1434.  In order to demonstrate prejudice in this context, petitioner must show that, but for appellate counsel's errors, he probably would have prevailed on appeal.  Id. at 1434 n.9.

Petitioner has failed to demonstrate prejudice with respect to this claim.  For the reasons explained above, petitioner's claims regarding the alleged ineffective assistance provided by his trial court counsel are meritless.  Appellate counsel's decision to press only issues on appeal that he believed, in his professional judgment, had more merit than the claims now suggested by petitioner was "within the range of competence demanded of attorneys in criminal cases."  McMann v. Richardson, 397 U.S. 759, 771 (1970).  There is no evidence in the record that appellate counsel's investigation was incomplete, that a more thorough investigation would

18

1  have revealed additional meritorious issues on appeal, or that appellate counsel's decision not to

2  raise the issues suggested by petitioner fell below an objective standard of reasonableness.  The

3  state court determination with regard to petitioner's claim of ineffective assistance of appellate

4  counsel was not contrary to, or an unreasonable application of <u>Strickland</u>.  Accordingly,

5  petitioner is not entitled to habeas relief as to this claim.

6            C.  <u>Alleged Errors by the Trial Court</u>

7          In his final three claims, petitioner contends that: (1) his rights to due process and

8  to self-representation were violated by the trial court's failure to continue the trial date after

9  granting his motion to represent himself; (2) his waiver of his right to counsel was not knowing,

10  intelligent and unequivocal; and (3) his right to due process was violated by the trial court's

11  denial of his motions for new trial and to suppress his statements to the police.  (Pet. at 25-30.)

12  Respondents argue that these claims are barred by the doctrine of procedural default.  (Answer at

13  24-26.)  After discussing the issue of procedural default, this court will analyze these claims in

14  turn below.

15            1.  <u>Procedural Default</u>

16          On July 9, 2004, petitioner filed a petition for writ of habeas corpus in the San

17  Joaquin County Superior Court.  (Answer, Ex. D.)  Petitioner captioned his claims in that petition

18  as follows: "(1) ineffective assistance of counsel (2) prosecutorial misconduct (3) judicial

19  prejudice (4) miscarriage of justice (5) Miranda violations (6) denial of discovery & continuance

20  motions."  (<u>Id</u>. at consecutive p. 2.)  Two of the three claims of trial court error raised in the

21  instant petition were presented in petitioner's Superior Court habeas petition under the heading

22  /////

23  /////

24  /////

25  /////

26  /////

"judicial prejudice." (Id. at 22-30.)[9]  The Superior Court denied relief as to these claims of

"judicial prejudice" with a citation to In re Dixon, 41 Cal. 2d 756 (1953), reasoning as follows:

> . . . Petitioner cites a series of errors which resulted in his conviction for violations of Veh. Code 10851 and Penal Code 496, strike prior and prior prison terms, including: (1) ineffectiveness of counsel in pre-trial; (2) prosecutorial misconduct; (3) judicial prejudice; (4) miscarriage of justice; (5) Miranda violation; and (6) denial of discovery motion.
>
> * * *
>
> An issue raised through habeas corpus which could have been raised on direct appeal but was not, may be dismissed.  (In re Dixon (1953) 41 C2d 756).  Of the six issues raised now by petition, three of them could and should have been raised on appeal.  Specifically, issues (3), (5) and (6) concerning matters that would be reflected in the trial court record, could have been raised on appeal assuming some validity to the claims and based on the appellate record, it is clear they were not included in the appeal.  Therefore, Petitioner has failed to state a prima facie case for relief and denial of the petition as to those 3 issues is appropriate.

(Answer, Ex. E at 1, 2.)  Respondents argue that the San Joaquin County Superior Court's

citation to In re Dixon constitutes a procedural bar precluding this court from considering the

merits of these two claims of trial court error.

State courts may decline to review a claim based on a procedural default.

Wainwright v. Sykes, 433 U.S. 72, 81-82 (1977).  As a general rule, a federal habeas court "'will

not review a question of federal law decided by a state court if the decision of that court rests on

a state law ground that is independent of the federal question and adequate to support the

judgment.'"  Calderon v. United States District Court (Bean), 96 F.3d 1126, 1129 (9th Cir. 1996)

(quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  The state rule is only "adequate" if

---

[9]  Specifically, petitioner's claims that the state trial court violated his federal constitutional rights when it refused to continue the trial date after granting his motion to represent himself and when it denied his motions for new trial and to suppress his statements to Officer Ridenour were both raised in his petition filed with the San Joaquin County Superior Court.  (Answer, Ex. D.)  However, petitioner's claim that his waiver of the right to counsel was involuntary was not contained in his petition filed in the Superior Court.  Rather, this claim was raised only in habeas petitions filed in the California Court of Appeal and California Supreme Court, as explained below.

1  it is "firmly established and regularly followed." Id. (quoting Ford v. Georgia, 498 U.S. 411,

2  424 (1991)).  See also Bennett v. Mueller, 322 F.3d 573, 583 (9th Cir. 2003) ("[t]o be deemed

3  adequate, the state law ground for decision must be well-established and consistently applied.")

4  The state rule must also be "independent" in that it is not "interwoven with the federal law."

5  Park v. California, 202 F.3d 1146, 1152 (9th Cir. 2000) (quoting Michigan v. Long, 463 U.S.

6  1032, 1040-41 (1983)).  Even if the state rule is independent and adequate, the claims may be

7  heard if the petitioner can show:  (1) cause for the default and actual prejudice as a result of the

8  alleged violation of federal law; or (2) that failure to consider the claims will result in a

9  fundamental miscarriage of justice.  Coleman, 501 U.S. at 749-50.

10         Procedural default is an affirmative defense, and the state has the burden of

11  showing that the default constitutes an adequate and independent ground.  Insyxiengmay v.

12  Morgan, 403 F.3d 657, 665-66 (9th Cir. 2005); Bennett, 322 F.3d at 585-86.  The Dixon bar may

13  be "independent" as applied in this case.  See Bennett, 322 F.3d at 581-83.  However,

14  respondents have not met their burden of demonstrating that the Dixon bar is "adequate," having

15  been regularly and consistently applied in habeas actions post-1993.[10]  322 F.3d at 583-86.  See

16  also Wyrick v. Newland, No. C 03-5623 JSW, 2007 WL 760529, at *5-6 (N.D. Cal. Mar. 9,

17  2007) (rejecting argument that citation to Dixon constituted adequate procedural bar and finding

18  that the state had failed to meet its burden of proof under Bennett of establishing the adequacy of

19  the procedural bar to preclude federal review).  This court finds respondents' argument that the

20  Superior Court's citation to In re Dixon constitutes a procedural bar to federal review of

21  petitioner's claims to be unpersuasive.  Accordingly, the court will address these two claims of

22  trial court error on the merits, while recommending that relief be denied.

23  /////

24

25        [10]  The Ninth Circuit has held that the Dixon procedural bar was not firmly established
    and consistently applied at least prior to 1993 and therefore cannot constitute an independent and
26  adequate state procedural bar prior thereto.  See Cooper v. Calderon, 255 F.3d 1104, 1111 (9th
    Cir. 2001); Fields v. Calderon, 125 F.3d 757, 765 (9th Cir. 1997).

1    After the California Superior Court rejected petitioner's claims of judicial error on

2    procedural grounds, petitioner raised the claims again in habeas petitions filed in the California

3    Court of Appeal and the California Supreme Court.  (Answer, Exs. F, H.)  Both of those petitions

4    were summarily denied.  (Answer, Exs. G, H.)  Under these circumstances, the decisions of the

5    California Court of Appeal and California Supreme Court were also based on procedural

6    grounds.  See Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) ("Where there has been one

7    reasoned state judgment rejecting a federal claim, later unexplained orders upholding that

8    judgment or rejecting the same claim rest upon the same ground").  Because there is no state

9    court decision on the merits of these two claims of judicial error advanced by petitioner, the

10   claims must now be reviewed de novo.  Nulph, 333 F.3d at 1056; Pirtle, 313 F.3d at 1167.

11   Accordingly, this court will review de novo petitioner's claims that the state trial court violated

12   his federal constitutional rights when it refused to continue the trial date after granting his motion

13   to represent himself and when it denied his motions for new trial and to suppress his statements

14   made to Officer Ridenour.

15       Petitioner also claims that his waiver of the right to counsel was not knowing,

16   intelligent and unequivocal.  (Pet. at 30.)  Petitioner raised this claim for the first time in a

17   petition for a writ of habeas corpus filed in the California Court of Appeal.  (Answer, Ex. F at

18   30.)[11]  That petition was summarily denied.  (Answer, Ex. G.)  Petitioner raised the claim again

19   in a petition for writ of habeas corpus filed in the California Supreme Court.  (Answer, Ex. H at

20   4, 18.)  That petition was also summarily denied.  (Answer, Ex. H at consecutive p. 1.)  Absent

21   any citation to authority or the existence of a lower state court decision relying on procedural

_____

23       [11]  As noted above, respondents argue that all of petitioner's claims of trial court error,
     including this one, are procedurally barred based upon the San Joaquin County Superior Court's
24   denial of the habeas petition before it with a citation to In Re Dixon.  (Answer at 23-26.)
     However, the argument does not apply to this claim that petitioner's waiver of the right to
25   counsel was not knowing, intelligent and unequivocal, because no such claim was presented to
     the Superior Court.  (See Answer, Ex. D.)  Rather, this claim was presented only in petitions filed
26   in the California Court of Appeal and the California Supreme Court, both of which were
     summarily denied.  (Answer, Exs. F, G & H.)

22

1   grounds, this court must presume that the California Supreme Court's summary denial of

2   petitioner's habeas petition constitutes a decision on the merits.  Hunter v. Aispuro, 982 F.2d

3   344, 346-47 (9th Cir. 1992).  As explained above, where the state court reaches a decision on the

4   merits but provides no reasoning to support its conclusion, a federal habeas court independently

5   reviews the record to determine whether habeas corpus relief is available under section 2254(d).

6   Himes, 336 F.3d at 853; Delgado, 223 F.3d at 982.  This court will also follow that procedure

7   with regard to petitioner's claim that his waiver of the right to counsel was involuntary.

8                    2. State Court's Refusal to Continue the Trial Date

9                    Petitioner claims that the trial court violated his federal constitutional rights when

10  it refused to continue the trial date in his case after granting his motion for self-representation.

11  Petitioner argues that the trial court's failure to grant a continuance denied him "the essential

12  requirements to prepare his defense."  (Pet. at 24.)

13                    a.  Background

14                    The state court record reflects that on April 8, 2002, petitioner made a motion for

15  substitute counsel pursuant to People v. Marsden, 2 Cal. 3d 118 (1970).  (Clerk's Transcript on

16  Appeal (CT) at 103.)[12]  The trial court denied the motion after conducting an in camera hearing.

17  (Id.)  Later that same day, petitioner filed a form motion seeking to represent himself.  (Id.; RT at

18  15.)  After reading the form and attached questionnaire submitted by petitioner, the trial judge

19  found that petitioner met the "minimum requirements" for self-representation.  (RT at 15.)  The

20  court informed petitioner that he would "try to explain things as we go along but in terms of

21  spending much time explaining, I won't be doing that."  (Id.)  The court also explained to

22  petitioner that he would not get "special privileges at the jail."  (Id. at 16.)  Petitioner responded:

23  "At this time, it is a good idea.  I'm not ready for trial in Pro Per.  I have a motion for a

24

25          [12]  In People v. Marsden, 2 Cal. 3d 118 (1970), the California Supreme Court held that a
       trial court must permit a defendant seeking a substitution of counsel to specify the reasons for his
26     request.

                                                    23

continuance so I can have my right to prepare a defense." (Id.)  The trial judge stated that he was

"concerned that this will cause a delay in starting your trial." (Id.)  Petitioner then stated that he

had a motion for continuance and a motion for discovery ready to file.  (Id.)

The trial court asked the prosecutor if he was "objecting to any delay." (Id.)  The

prosecutor responded that he would object to a delay of the trial because he was "ready to

proceed" and had "witnesses subpoenaed and the trial is set for today." (Id. at 17.)  The trial

court stated, "That being the case, Mr. Rodriguez, I don't see how you can be ready to go today."

(Id.)  Petitioner responded that "none of [his] witnesses are subpoenaed" and stated that he didn't

know whether they could be contacted.  (Id.)  The trial court then made the following statement:

> I'm going to continue this one day until tomorrow morning.
> Mr. Lundberg (petitioner's counsel), I want you to talk to Mr.
> Rodriguez about whether – because I am at this point today, I'm
> denying the motion as untimely.  If by tomorrow there's a motion
> to continue, it's granted, then a request by his own counsel would
> not be untimely.  Okay.  So I'm denying the motion to be your own
> lawyer but you can bring that motion again if you wish but I will
> continue this one day until tomorrow.

(Id. at 17-18.)  Petitioner then informed the court that he did not have all of his property at the

county jail where he was housed.  (Id. at 18.)  The court agreed to issue an order requiring that

petitioner's property be brought to his cell, while expressing uncertainty as to whether the order

would be complied with.  (Id.)

The following day, petitioner again informed the court that he wished to represent

himself. (Id. at 21.)  The court responded as follows:

> THE COURT:  And my ruling is you may do that if you go to trial
> today, but if it's going to result in a delay – and I can't see how it
> wouldn't result in a delay – I'm not going to allow that.
>
> DEFENDANT RODRIGUEZ:  Okay.  Well, I'd like to recommend
> that I get on record that I proceed in pro per.
>
> And this Honorable Court is not going to allow me to file this
> motion for continuance based on the grounds that I barely got all
> this information from the DA, the information as to the charges,

1   therefore I don't have no adequate – adequate time to prepare for
    my defense in trial.

2
    Therefore, if we go to trial today as a pro per defendant, it's going
3   to be one lopsided, lopsided case.

4   THE COURT:  That's right.  And that's why I'm not going to let
    you go pro per, because it's not timely.

5
    DEFENDANT RODRIGUEZ:  Well, I'm not ready to go to trial.
6   That's my whole thing.

7   THE COURT:  And I agree with you.  I agree that you're not
    ready, so I'm not going to let you do it.  That's where the Court is.

8

9   (Id. at 22-23.)  The trial judge clarified that he was denying petitioner's request to represent

10  himself as "untimely" because the request was "brought on the day of trial."  (Id. at 22.)

11  Petitioner's counsel then made the following statement:

12          We had a Marsden hearing yesterday, but Mr. Rodriguez made the
            point that I – sounds like it might be true, is that at the date of the
13          995 and the readiness, I think Mr. Rodriguez wanted to make a
            Marsden hearing at that point and was not able to make it at that
14          point.

15  (Id. at 24.)  The trial court agreed that if petitioner had attempted to make an earlier motion for

16  substitute counsel but was unable to have it heard at that time, "it could have an impact as to

17  whether at that point, if a Marsden was heard and denied, whether he would have moved for – to

18  be pro per at that point."  (Id. at 25.)  However, the court declined to "change" its ruling denying

19  petitioner's motion for self-representation.  (Id.)

20          Petitioner's counsel then requested a two-day continuance of the trial on the basis

21  that he needed to explore some new material that "may bear on bias of the witnesses against Mr.

22  Rodriguez."  (Id. at 29-31.)  The prosecutor argued that a two-day delay in the trial would

23  inconvenience the victim and the Russian interpreter who had been retained to appear on the day

24  scheduled for trial.  (Id. at 31-32.)  The trial court then stated:

25          All right.  All right.  I – I put Mr. Rodriguez in the position of
            having to have a lawyer he doesn't want, and I think I made the
26          right decision.  But if the request for two days to let Mr. Lundeberg

                                        25

1       get up to speed on it will tend to allay in some degree the interests
        of Mr. Rodriguez in representation – it wouldn't be him
2       representing himself, but perhaps it will help him feel some more
        confidence in the job Mr. Lundeberg can do for him.  And I don't
3       think that's an unreasonable request.

4   (Id. at 32.)  The trial court ultimately agreed to continue the trial for one day.  (Id. at 39-40.)

5           On April 10, 2002, petitioner's counsel informed the court that petitioner had told

6   him he wished to renew his motion to represent himself and that he was "prepared to proceed and

7   doesn't seek a continuance.  (Id. at 59.)  The following exchange then occurred:

8       MR. LUNDEBERG:  Let me explain, okay.  At his prior request to
        be his own counsel, he had filed a motion – he had requested a
9       motion to continue, which the Court denied.  I think what he wants
        to do is to have that on record.  He realizes the Court has ruled that
10      the matter would not be continued, okay.

11      THE COURT:  Well, I'm not going to file it, but I'll make it an
        exhibit for the – for the hearing, yesterday's hearing.
12
        MR. LUNDEBERG:  Right.
13
        THE COURT:  All right.  So it will be part of the court record.
14
        MR. LUNDEBERG:  But what he's informed me as of today is
15      that he realizes the Court is not going to grant his – a continuance.
        I'm not seeking one at this point, Court's not going to give one.
16      However, he does still wish to represent himself and he is prepared
        to proceed to trial as his own attorney.
17
        THE COURT:  Well, I do want to ask you about that, Mr.
18      Rodriguez.  I previously indicated that I thought that you had the
        minimal abilities necessary to represent yourself, which is not to
19      say, you know, that you wouldn't – that you would be better off
        representing yourself.  But it's your right, okay.
20
        The question then is whether you believe you are ready or prepared
21      to represent yourself at this time.

22      THE DEFENDANT:  Okay.  I'd like to reflect back on the Court's
        record that you compelled me to go to trial with Mr. Lundeberg,
23      okay.  Therefore, if I select to become pro per and pro se defendant
        in this trial, I'm going to be compelled to be ready by this
24      honorable Court.  And I will take that and clearly state, given those
        regards to the Court's rulings, and the differences between tactics
25      between myself and Mr. Lundeberg, then I'm going to be
        compelled to proceed as pro se defendant in this trial and I have to
26      be ready.

26

1    THE COURT:  . . . Well, I understood exactly what you said, but I
     have a slightly different question.  Do you believe that you will be
2    ready, whether you have to be or not, will you be ready to try this
     case immediately?
3
     THE DEFENDANT:  Well, that's the question that I can't answer
4    until I'm given the title of pro se defendant or not.

5    (Whereupon, defendant and counsel conferred.  Not reported.)

6    THE COURT:  Okay.  So I will tell you now, if you ask me to
     make you – to allow you to represent yourself, I'm going to assume
7    that you're representing that you are prepared for trial.  And if I
     appoint you, you should infer from that that the Court is not going
8    to grant a continuance.  Although, you certainly are entitled to
     make such a motion after – after being – if you're permitted to –
9    after the discharge of Mr. Lundeberg.

10   THE DEFENDANT:  Yes, I understand.

11   THE COURT:  But – okay.  And I'll certainly consider your
     request.  But I'm going to assume that you're prepared to proceed
12   from the fact that you have made a request.

13   THE DEFENDANT:  Yes, I am.

14   (Id. at 61-62.)

15           At that point, the trial court granted petitioner's motion to represent himself.  (Id.

16   at 65.)  Petitioner then asked if he could submit his motion for continuance "as an exhibit."  (Id.

17   at 66.)  The court accepted the motion and deemed it Exhibit A to petitioner's previous motion

18   for continuance.  (Id.)  The trial court did not expressly rule on petitioner's "Exhibit A" and

19   petitioner did not renew his motion for a continuance of the trial.[13]

20           b.  Applicable Law

21           In Faretta v. California, 422 U.S. 806, 821 (1975), the United States Supreme

22   Court held that an accused has a Sixth Amendment right to conduct his own defense, provided

23   only that he knowingly and intelligently waives his right to counsel and that he is able and

24   willing to abide by rules of procedure and courtroom protocol.  The holding of Faretta is based

25   _____

26       [13]  Petitioner's "Exhibit A" is not contained in the record provided by the parties to this
     court.

                                                 27

on "the long-standing recognition of a right of self-representation in federal and most state courts, and on the language, structure, and spirit of the Sixth Amendment." <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 174 (1984).  In order to successfully invoke the right to self-representation, the defendant's waiver of counsel must be "timely, not for the purposes of delay, unequivocal, and knowing and intelligent." <u>United States v. Erskine</u>, 355 F.3d 1161, 1167 (9th Cir. 2004).

The matter of whether to grant a continuance is traditionally within the discretion of the trial judge.  <u>Avery v. Alabama</u>, 308 U.S. 444, 446 (1940); <u>Grotto v. Herbert</u>, 316 F.3d 198, 206 (2nd Cir. 2003).  There are no specific tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  <u>Ungar v. Sarafite</u>, 376 U.S. 575, 589 (1964);  <u>Grotto v. Herbert</u>, 316 F.3d at 206.  "The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied." <u>Ungar v. Sarafite</u>, 376 U.S. at 589.  Thus, under some circumstances a denial of a request for more time may not violate due process "even if the party fails to offer evidence or is compelled to defend without counsel." <u>Id.</u>  <u>See also</u> <u>Morris v. Slappy</u>, 461 U.S. 1, 11-12 (1983) (recognizing the broad discretion granted to trial courts on such matters and finding no Sixth Amendment violation based upon the denial of a continuance).

On direct appeal from a federal criminal conviction, the Ninth Circuit Court of Appeals balances four factors in determining whether a trial court was unreasonable in denying a motion to continue: (1) the appellant's diligence in preparing his case; (2) the likelihood that the continuance would serve a useful purpose; (3) whether the continuance would inconvenience the parties, the court, or other witnesses; and (4) whether the appellant was prejudiced by the district court's refusal to grant the request for a continuance.  <u>United States v. Rivera-Guerrero</u>, 426 F.3d 1130, 1138-39 (9th Cir. 2005); <u>see also</u> <u>United States v. Flynt</u>, 756 F.2d 1352, 1359 (9th Cir. 1985).  While none of the first three factors is ordinarily dispositive, the defendant must always establish prejudice stemming from the denial of the continuance to be entitled to relief.  <u>Rivera-</u>

1  Guerrero, 426 F.3d at 1139; Martel v. County of Los Angeles, 56 F.3d 993, 995 (9th Cir. 1995)

2  (en banc) (a conviction will not be reversed for failure to grant a continuance unless the federal

3  appellant can show that he suffered actual and substantial prejudice).[14]  When a continuance is

4  sought to obtain witnesses, "the accused must show who they are, what their testimony will be,

5  that the testimony will be competent and relevant, that the witnesses can probably be obtained if

6  the continuance is granted, and due diligence has been used to obtain their attendance on the day

7  set for trial."  United States v. Hoyos, 573 F.2d 1111, 1114 (9th Cir. 1978) (quoting Leino v.

8  United States, 338 F.2d 154, 156 (10th Cir. 1964)).  Additionally, "[w]hen a motion for a

9  continuance arguably implicates a defendant's Sixth Amendment right to counsel, the court must

10  consider the effect of its decision on this fundamental right."  United States v. Garrett, 179 F.3d

11  1143, 1147 (9th Cir. 1999) (en banc).

12          c.  Analysis

13          Petitioner claims that the state trial court's refusal to grant him "at least 5 days"

14  continuance of his trial deprived him of the opportunity to present a defense and effectively

15  deprived him of his right to self-representation.  (Pet. at 25.)  Petitioner contends that he was

16  "forced" to proceed to trial even though he was not prepared to do so.  (Id.)  He notes that even

17  the trial court opined that he could not be ready to proceed to trial on the scheduled date.

18          First, this court observes that the state trial court did not violate petitioner's right

19  to self-representation.  Petitioner's Faretta motion was granted and he was allowed to represent

20  himself at trial.  To the extent petitioner is arguing that the trial court's decision not to postpone

21  the trial rendered him unable to represent himself effectively, his argument should be rejected.

22  For the reasons explained below, petitioner has failed to establish that he was prejudiced by any

23  lack of time to further prepare his defense.  The essence of petitioner's claim appears to be that

24  _____

25          [14]  In the context of a collateral challenge to a state court conviction, this court is not
    required to apply this same test.  Nonetheless, the criteria identified by the Ninth Circuit in
26  reviewing federal convictions on appeal is useful in analyzing the constitutional claim posed
    here.

29

1   the trial court's failure to grant a continuance of his trial violated his right to a fair trial.

2   Petitioner has failed to establish prejudice with respect to this due process claim.

3            Petitioner informed the trial court that he wanted a continuance "so I can have my

4   right to prepare a defense." (RT at 16.) He further stated that he had a "motion for discovery"

5   and that "none of my witnesses are subpoenaed." (Id. at 17.) However, petitioner has not

6   explained how, or whether, the defense he intended to present differed from the defense his

7   previous counsel had already prepared. Petitioner has also failed to describe the discovery he

8   needed or who his witnesses were and/or why they were necessary to his defense. Whether the

9   denial of a continuance violates a defendant's right to due process is dependent on "the

10  circumstances present in every case, particularly in the reasons presented to the trial judge at the

11  time the request is denied." Ungar, 376 U.S. at 589-590. The vague reasons presented by

12  petitioner to the trial judge did not compel a different decision on petitioner's request for a

13  continuance.

14           Although petitioner complains that he was not ready to proceed to trial on the

15  scheduled date, he has failed to demonstrate that he needed any additional time in order to

16  prepare his case. The court notes that petitioner did not request any continuances during the

17  course of his trial, nor did he complain about a lack of ability to present his defense as the trial

18  was underway. A review of the record reflects that petitioner called witnesses in support of his

19  defense, competently engaged in direct and cross-examination, and made opening and closing

20  statements to the jury. Petitioner's performance at trial was adequate and equal to the task.

21  There is no evidence that the denial of a continuance at the start of trial prevented petitioner from

22  effectively presenting his case pro se.

23           In the application before this court, petitioner appears to be claiming that the trial

24  court's denial of a continuance prejudiced his ability to call Jeremy Foster as a witness. (Pet. at

25  26.) However, as explained above, petitioner has failed to demonstrate that Jeremy Foster would

26  have agreed to testify or that he would have supported petitioner's theory of the defense.

1  Petitioner also argues that he suffered prejudice because he was denied the opportunity to call the

2  following witnesses in his defense: "Richard Harmon, Mr. Harmon's mom, and AOR of Mr.

3  Harmon, Mr. Patrick Piggott." (Id. at 29.)  Again, petitioner has failed to show that these

4  witnesses would have been willing to offer relevant, probative evidence at his trial or what their

5  testimony would have been.  Finally, petitioner argues that a delay in the trial would have

6  allowed him to present evidence regarding the "false" testimony of Officer Ridenour.  (Id. at 26-

7  28; Traverse at 16-17.)  However, as explained above, petitioner has failed to establish that

8  Ridenour's testimony was false in any respect.  None of these allegations establish that petitioner

9  was prejudiced by the trial court's refusal to further continue the trial date.

10          Petitioner's claim, if any, that his waiver of the right to counsel was involuntary

11  because he was "forced" to continue to trial unprepared must also fail.  Some limitations on a

12  defendant's free choice with regard to whether to proceed pro se or with counsel "are not

13  constitutionally offensive and do not render a subsequent election of pro se status involuntary."

14  United States v. Robinson, 913 F.2d 712, 716 (9th Cir. 1990).  "When a defendant is given a

15  clear choice between waiver of counsel and another course of action, such as retaining present

16  counsel, the choice is voluntary as long as it is not constitutionally offensive."  United States v.

17  Padilla, 819 F.2d 952, 955 (10th Cir. 1987).  For the foregoing reasons, the choice given

18  petitioner between proceeding to trial on the scheduled date with counsel or proceeding on the

19  scheduled date without counsel was constitutionally permissible and did not render his waiver of

20  his right to counsel involuntary.  Moreover, petitioner has failed to show that he was unable to

21  effectively represent himself because of the trial court's failure to grant a trial continuance.

22  Accordingly, petitioner is not entitled to relief on his claim that the trial court's refusal to delay

23  the commencement of his trial resulted in a violation of his constitutional rights.

24          3.  Denial of Motion to Suppress and Motion for New Trial

25          Petitioner claims that the state trial court violated his federal constitutional rights

26  by denying his motion to suppress his statements made to Officer Ridenour and his motion for

31

new trial "based on . . . the unsupported statement" of Officer Ridenour.  (Pet. at 26-29.)

Petitioner also appears to be arguing that a continuance of his trial would have allowed him to

explore the "Miranda violations" that he alleges occurred during his interview with Officer

Ridenour.  (Id. at 26-27.)

        As discussed above, petitioner has failed to demonstrate that there was any

constitutional violation with respect to the trial testimony of Officer Ridenour or the trial court's

failure to grant a continuance of the trial date.  Petitioner's vague allegations fail to demonstrate

that the trial court's rulings on his suppression motion and his motion for new trial were

erroneous, biased or prejudicial.  Accordingly, petitioner is not entitled to relief on these claims.

        4.  Involuntary Waiver of the Right to Counsel

        Citing the decisions in Faretta and United States v. Hayes, 231 F.3d 1132,

1137-38 (9th Cir. 2000), petitioner claims that his waiver of his right to counsel was invalid

because it was not "knowing intelligent and unequivocal."  (Pet. at 30.)  Petitioner also claims

that his right to self-representation was violated because he was not allowed sufficient access to

legal materials.  The court will analyze these claims in turn below.

        a.  Involuntary Waiver

        In Faretta, the United States Supreme Court established that if a defendant

chooses to represent himself, his decision to do so must be made knowingly and intelligently.

422 U.S. at 807.  "Although a defendant need not himself have the skill and experience of a

lawyer in order competently and intelligently to choose self-representation, he should be made

aware of the dangers and disadvantages of self-representation, so that the record will establish

that he knows what he is doing and his choice is made with eyes open."  422 U.S. at 835.  A trial

court is not required to assess whether petitioner is familiar with evidentiary rules or the relevant

law.  Id. at 836.  As has been recognized:

> In fact, a defendant's technical knowledge is not relevant to an
> assessment of his knowing exercise of the right to defend himself.
> As the Supreme Court recently stated, "the trial judge is under no

> duty to provide personal instruction on courtroom procedure or to perform any legal chores' for the defendant that counsel would normally carry out."

Lopez v. Thompson, 202 F.3d 1110, 1119 (9th Cir. 2000) (en banc) (quoting Martinez v. Court of Appeal of California, 528U.S. 152, 161 (2000)).

However, a "careful inquiry" by the trial court regarding the defendant's request for self-representation is "essential" to protecting both a defendant's right to counsel and his right to represent himself.  United States v. Hernandez, 203 F.3d 614, 623 (9th Cir. 2000).  The Ninth Circuit Court of Appeals has advised that "suggesting that there are consequences in the abstract is not enough; there must be some instruction or description, however minimal, of the specific dangers and disadvantages of proceeding pro se" in order for a waiver of the right to counsel to withstand constitutional scrutiny.  Hayes, 231 F.3d at 1137-38.  In Hayes, the court declined to adopt any standard formula to meet the requirements of Faretta.  231 F.3d. at 1138.  Rather, the court explained that "[i]n determining whether a defendant legitimately waived counsel, a trial judge must focus on the defendant's understanding of the importance of counsel, not the defendant's understanding of the substantive law or procedural details." Id.[15]

---

[15]  In this regard, the Ninth Circuit suggested, but did not require, the following advisement:

> The court will now tell you about some of the dangers and disadvantages of representing yourself. You will have to abide by the same rules in court as lawyers do. Even if you make mistakes, you will be given no special privileges or benefits, and the judge will not help you. The government is represented by a trained, skilled prosecutor who is experienced in criminal law and court procedures. Unlike the prosecutor you will face in this case, you will be exposed to the dangers and disadvantages of not knowing the complexities of jury selection, what constitutes a permissible opening statement to the jury, what is admissible evidence, what is appropriate direct and cross examination of witnesses, what motions you must make and when to make them during the trial to permit you to make post-trial motions and protect your rights on appeal, and what constitutes appropriate closing argument to the jury.

Hayes, 231 F.3d at 1138-39.  However, it is clear that neither the U.S. Constitution nor the Supreme Court's decision in Faretta compels that the state courts engage in any specific colloquy with a defendant seeking to represent himself.  Lopez  v. Thompson, 202 F.3d 1110, 1117 (9th Cir. 2000) (en banc).  Rather, the state trial court need only make the defendant "aware of the

1    In cases decided prior to Hayes, the Ninth Circuit had suggested that, as a

2    precondition to accepting a request to proceed pro se, the defendant must be made aware of: "(1)

3    the nature of the charges against him; (2) the possible penalties; and (3) the dangers and

4    disadvantages of self-representation." Hernandez, 203 F.3d at 623-624. "A waiver of counsel

5    cannot be knowing and intelligent unless the accused appreciates the possible consequences of

6    mishandling these core functions and the lawyer's superior ability to perform them." United

7    States v. Balough, 820 F.2d 1485, 1487 (9th Cir. 1987) (quoting United States v. Kimmel, 672

8    F.2d 720, 721 (9th Cir. 1982)). If the trial court does not explain on the record the risks of

9    self-representation, a reviewing court must consult "the particular facts and circumstances

10   surrounding that case, including the background, experience and conduct of the accused" to

11   determine whether the waiver was nonetheless knowing and intelligent. Kimmel, 672 F.2d at

12   1252 (quoting Cooley v. United States, 501 F.2d 1249, 1252 (9th Cir. 1974)). See also Lopez,

13   202 F.3d at 118 (reviewing the record as a whole in determining that petitioner's waiver of his

14   right to representation was knowing and intelligent). The court must "approach this question

15   cautiously, indulging 'every reasonable presumption against waiver.'" United States v. Farhad,

16   190 F.3d 1097, 1099 (9th Cir. 1999) (quoting United States v. Arlt, 41 F.3d 516, 520 (9th Cir.

17   1994)). See also Brewer v. Williams, 430 U.S. 387, 404 (1977) (every reasonable presumption

18   against waiver); Barker v. Wingo, 407 U.S. 514, 525 (1972) (same).[16]

19   /////

20

21   dangers and disadvantages of self-representation ." Lopez , 202 F.3d at 1117-18 (quoting Faretta
22   422 U.S. at 835).

23    [16]  The question of who bears the burden of proof on this issue in this context is arguably
     unresolved. Compare Brewer v. Williams, 430 U.S. 387, 404 (1977) ("it [is] incumbent upon the
24   State to prove 'an intentional relinquishment or abandonment of a known right or privilege.' ")
     and United States. v. Lopez-Vasquez, 1 F.3d 751, 754 (9th Cir. 1993) (same) with Johnson v.
25   Zerbst, 304 U.S. 458, 468-69 (1938) (burden of proof rests upon a habeas petitioner to establish
     that he did not competently and intelligently waive his constitutional right to assistance of
26   counsel.) Nonetheless, in light of the undisputed record in this case, resolution of the issue posed
     does not rest on the burden of proof.

1        There is no doubt in this case that petitioner's request to represent himself was

2 unequivocal.  The mere fact that some of petitioner's statements regarding his preference to

3 proceed pro se "were accompanied by expressions of his feeling 'forced' to do so does not render

4 those statements equivocal."  <u>Robinson</u>, 913 F.2d at 714.  The question presented here, however,

5 is whether petitioner sufficiently understood the dangers and disadvantages of self-representation

6 to waive his right to counsel knowingly and intelligently.  The undersigned concludes that he did

7 not.

8        When petitioner informed the trial court that he wished to represent himself, the

9 trial judge's response only insinuated that there might be some dangers in doing so.  The trial

10 judge did not specify in any way what those dangers were.  Specifically, as described above, the

11 trial court merely told petitioner that he would "try to explain things as we go along but in terms

12 of spending much time explaining, I won't be doing that."  (RT at 16.)  The judge also told

13 petitioner that he would not get "special privileges at the jail."  (<u>Id.</u>)  The trial judge asked

14 petitioner to "take a minute and think about whether that's a good idea or not."  (<u>Id.</u>)  Later, the

15 judge warned petitioner, "there's an ancient Chinese proverb goes something like, 'Be careful

16 what you wish for, you may get it.'"  (<u>Id.</u> at 64.)  At another point in the proceedings, the trial

17 court stated, "I previously indicated that I thought that you had the minimal abilities necessary to

18 represent yourself, which is not to say, you know, that you wouldn't – that you would be better

19 off representing yourself."  (<u>Id.</u> at 61.)  This is the complete and full extent of the "warnings" that

20 petitioner received from the trial judge upon requesting to represent himself.

21        The trial judge did not explain or even allude to the advantages of proceeding with

22 counsel.  Petitioner was not informed of the nature of the charges against him, the possible

23 penalties he faced, or the dangers of self-representation.  There was no discussion with petitioner

24 of possible defenses or mitigating factors which might be available to him.  Essentially, the only

25 thing the trial judge told petitioner is that he would not receive any help from the court.  While

26 the U.S. Constitution does not require state trial courts to engage in any specific colloquy with a

criminal defendant seeking to represent himself, the warnings given in this case were insufficient.[17]  See United States v. Aponte, 591 F.2d 1247, 1248 & 1250 (9th Cir. 1978) (waiver of counsel insufficient where trial court merely admonished defendant that he would be bound by the same rules as any lawyer and that he would have to behave properly).

Petitioner was not assisted by advisory counsel during his trial and the record does not indicate that he had represented himself before or had previously been apprised of the dangers and disadvantages of self-representation.  There is nothing in the record that reveals "an unusual fact situation in which the background and experience of the defendant in legal matters [is] apparent . . . ."  Balough, 820 F.2d at 1488 (quoting United States v. Harris, 683 F.2d 322, 324 (1982)).  The trial court in this case certainly did not conduct a "probing and thorough" colloquy before accepting petitioner's waiver of his right to counsel.  See Cook, 516 F.3d at 818 (noting that the trial court in that case "conducted a 'probing and thorough' colloquy before finding Cook's waiver of his right to counsel was knowing, intelligent, and voluntary, satisfying its obligations under Faretta"); see also Von Moltke v. Gillies, 332 U.S. 708, 723-34 (1948) ("To be valid such waiver [of the right to counsel] must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter"); Moran v. Godinez, 57 F.3d 690, 699 (9th Cir. 1994) ("Under Faretta, the defendant must 'be aware of the nature of the charges against him, the possible penalties, and the dangers and disadvantages of

---

[17]  Although the record reflects that petitioner made a Marsden motion for substitute counsel, there is no evidence in the record that petitioner's request to represent himself was based on dissatisfaction with his appointed counsel.  In fact, the reason for petitioner's Faretta request is not apparent from the record.  Therefore, there is no issue in this case with respect to the trial court's failure to inquire into the relationship between petitioner and his counsel at the time petitioner requested to represent himself.  Cf. Cook v. Schriro, 516 F.3d 802, 817 (9th Cir. 2008) (trial court does not have a duty to inquire into the relationship between defendant and counsel once a defendant has made a request to represent himself if defendant fails to inform the court that he wants to represent himself because he believes his counsel is ineffective).

1  self-representation.'"), <u>overruled</u> <u>on</u> <u>other</u> <u>grounds</u> <u>by</u> <u>Lockyer v. Andrade</u>, 538 U.S. 63, 75-76

2  (2003)) .

3          In determining whether a defendant has knowingly and intelligently elected to

4  represent himself, "the trial court is to look not to the quality of his representation, but rather to

5  the quality of his decision." <u>Balough</u>, 820 F.2d at 1488.  In doing so, a reviewing court must

6  "focus on what the defendant understood, rather than on what the court said or understood." <u>Id.</u>

7  On the record in this case, it is not possible to ascertain what petitioner understood because he

8  received essentially no advisement regarding the dangers or consequences of proceeding without

9  counsel.  There was no  instruction or description, even minimally, of the "<u>specific</u> dangers of

10  self-representation." <u>Hayes</u>, 231 F.3d at 113 (emphasis added).  There is simply no basis in the

11  state court record upon which this court can conclude that petitioner knowingly and intelligently

12  waived his right to counsel.  Although the state trial court was not required to engage in any

13  specific colloquy, the lack of any inquiry or advice by the trial judge in this case was

14  constitutionally deficient.

15          In cases where reviewing courts have found an intelligent and knowing waiver of

16  the right to counsel, the defendant has been thoroughly advised of the pitfalls of self-

17  representation.  <u>See</u>, <u>e.g.</u>, <u>Farhad</u>, 190 F.3d at 1100 (waiver of right to counsel valid where

18  defendant was informed by the trial judge of the charges against him and the possible penalties

19  he faced if convicted; that in the event of a conviction he might face additional disciplinary

20  measures in state prison; about the "core functions" of an attorney that he would be expected to

21  perform at trial, as well as the superior ability of a lawyer to handle those tasks; was warned that

22  he would be expected to ask questions, make arguments, and observe the rules of evidence and

23  courtroom procedure; and was informed that there were resources, such as investigators and legal

24  research tools, that were unavailable to him but which were available to attorneys).  Courts have

25  been disinclined to find a valid waiver where the defendant has not been given specific advice

26  /////

1   regarding the dangers of self-representation.  See Hayes, 231 F.3d at 1137 n.2 & n.3 (and cases

2   cited therein).

3          As noted, the quality of petitioner's performance at trial is not dispositive of this

4   issue.  United States v. Mohawk, 20 F.3d 1480, 1485 (9th Cir. 1994) ("The manner in which a

5   defendant conducts his defense cannot establish his state of mind at the time he opted for

6   self-representation") (quoting Aponte, 591 F.2d at 1250).  Nor is the fact that petitioner had

7   previously experienced a criminal trial.  Kimmel, 672 F.2d at 722 (defendant who was assisted

8   by advisory counsel throughout his case, who had been prosecuted several times before and had

9   represented himself in at least one case, could not be deemed to understand sufficiently the

10  dangers and disadvantages of self-representation absent additional facts indicating that he had

11  been informed about the risks of self-representation).  Respondents speculates that perhaps

12  petitioner's counsel "may" have advised him about the dangers of self-representation prior to the

13  trial court's ruling on petitioner's Faretta motion.  However, "the law requires . . . a warning

14  from the court, not counsel."  Hendricks v. Zenon, 993 F.2d 664, 670 (9th Cir. 1993).

15         Under the circumstances presented here, and indulging every presumption against

16  waiver as it must, this court concludes that petitioner did not knowingly and intelligently waive

17  his right to counsel.  The California Supreme Court's summary denial of petitioner's habeas

18  petition setting forth his claim that his waiver of the right to counsel was not "knowing and

19  intelligent" was contrary to the United States Supreme Court's holding in Faretta that a criminal

20  defendant who wishes to represent himself  "should be made aware of the dangers and

21  disadvantages of self-representation."  422 U.S. at 835.  Accordingly, petitioner is entitled to

22  relief with respect to this claim.  42 U.S.C. § 2254(d)(1).

23         b.  Denial of Access to Legal Materials

24         Citing the decision in Bribiesca v. Galaza, 215 F.3d 1015, 1020 (9th Cir. 2000),

25  petitioner claims that "the denial of legal books by the court further errored (sic) to acknowledge

26  the petitioner's legal books allowed to a self-representing defendant."  (Pet. at 30.)  In this regard,

38

1  petitioner appears to be arguing that his right to self-representation was effectively denied

2  because of "the denial of legal books by the court." (Id.)

3          This claim was raised for the first time in petitioner's application for a writ of

4  habeas corpus filed in the California Court of Appeal. (Answer, Ex. F at 31.) Petitions

5  presenting the claim were summarily denied by both the California Court of Appeal and the

6  California Supreme Court. (Answer, Exs. G, H.) As explained, under these circumstances, this

7  court must independently review the record to determine whether habeas corpus relief is

8  available under section 2254(d). Himes, 336 F.3d at 853; Delgado, 223 F.3d at 982.

9          In Bribiesca the Ninth Circuit concluded that "[a]n incarcerated criminal

10 defendant who chooses to represent himself has a constitutional right to access to "law books . . .

11 or other tools" to assist him in preparing a defense. 215 F.3d at 1020 (quoting Milton v. Morris,

12 767 F.2d 1443, 1446 (9th Cir. 1985)). However, in Kane v. Garcia Espitia, 546 U.S. 9, 10 (2005)

13 the Supreme Court, while declining to decide whether such a right exists, held only that the

14 failure to provide legal resources to a criminal defendant proceeding pro se did not violate clearly

15 established federal law as required for the granting of habeas relief. See Amador v. Humboldt

16 Co. Correctional Facility, No. C 06-6043 MHP, 2007 WL 1411615, *4 (N.D. Cal. May 11,

17 2007). Petitioner's claim that he is entitled to habeas relief because his right to self-

18 representation was effectively denied because his access to legal materials was hindered is

19 therefore foreclosed by the Supreme Court's decision in Kane v. Garcia Espitia.

20          In any event, there is no evidence in this case that the trial court or the state denied

21 petitioner access to legal material necessary to enable him to prepare his defense. Although

22 petitioner was advised by the trial court that he would not be entitled to any "special privileges"

23 at the jail, there is no evidence that petitioner experienced any difficulty in accessing the law

24 library or in obtaining necessary legal materials.[18] Under these circumstances, petitioner is not

25

26          [18] As the Ninth Circuit stated in Bribiesca, "so long as the state did not restrict or deny access unconstitutionally, it would have been up to Bribiesca to decide whether, under the

1   entitled to relief on his claim that the trial court violated his constitutional rights by preventing

2   him adequate access to "legal books." (Pet. at 30.)

3                                         CONCLUSION

4              For the foregoing reasons, IT IS HEREBY RECOMMENDED that the writ of

5   habeas corpus be conditionally granted on petitioner's claim that his waiver of the right to

6   counsel was involuntary because he was not advised by the state trial court of the dangers of self-

7   representation.  Subject to the following exception, proceedings in the state court leading to

8   retrial shall be commenced within 60 days.  However, if either party appeals the judgment in this

9   case, no criminal proceedings need be commenced until 60 days after the issuance of the mandate

10   following a final appellate decision or the denial of a petition for writ of certiorari, whichever

11   occurs later.  In all other respects, it is recommended that petitioner's application for a writ of

12   habeas corpus be denied.

13              These findings and recommendations are submitted to the United States District

14   Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

15   days after being served with these findings and recommendations, any party may file written

16   objections with the court and serve a copy on all parties.  Such a document should be captioned

17   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

18   shall be served and filed within ten days after service of the objections.  The parties are advised

19   /////

20   /////

21   /////

22   /////

23   /////

24

25   circumstances, he wished to represent himself." 215 F.3d at 1020.  The same is true here.  The
     one advisement petitioner did receive was that he would not receive "special treatment" at the jail
26   based on his pro per status.  Nonetheless, petitioner chose to represent himself.

                                              40

that failure to file objections within the specified time may waive the right to appeal the District

Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: April 9, 2008.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8
rodriguez725.hc

41